UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PERFECT KETO, LLC,

        Plaintiff,

v.                              Case No. 8:21-cv-01295-MSS-AEP

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES, UNIVERSITY
OF SOUTH FLORIDA RESEARCH
FOUNDATION, INC., and AXCESS
GLOBAL SCIENCES, INC.,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Perfect Keto, LLC ("Perfect Keto") initiated this action against Defendants, University of South Florida Board of Trustees ("USF-BOT") and University of South Florida Research Foundation, Inc., ("USF-RF")[1] (collectively "USF") and Axcess Global Sciences, Inc., ("AGS") for a declaratory judgment of noninfringement and invalidity of U.S. Patent Number 10,646,462 ("the '462 Patent") (Doc. 1). Additionally, Perfect Keto raises state law tortious interference claims against AGS (Doc. 1). Before the Court is USF's Motion to Dismiss (Doc. 18), AGS' Motion to Dismiss (Doc. 19), Perfect Keto's Responses in opposition thereto (Docs. 27, 28), USF's Reply in support of its Motion to Dismiss (Doc. 35),

---

[1] USF-RF is a direct support organization of the university (Doc. 1, ¶¶ 3-4).

and Perfect Keto's Sur-Reply in opposition thereto (Doc. 37). By the Motions, USF asserts that this Court lacks subject matter jurisdiction and AGS asserts that Perfect Keto fails to state a claim upon which relief can be granted and Perfect Keto's state law claims are preempted by the Patent Act. On January 26, 2022, the undersigned conducted a hearing on the Defendants' Motions to Dismiss. Upon consideration, it is recommended that Perfect Keto's noninfringement and invalidity claims (Counts I & II) be dismissed and the Court decline to exercise jurisdiction as to the Texas state law claims (Counts III & IV).

## I.     Background

The University of South Florida is a public university that owns the '462 Patent (Doc. 1, ¶¶ 3-5). The '462 Patent relates to the use of beta-hydroxybutyrate monomer salt mixtures (Doc. 1, ¶ 24). AGS is the exclusive licensee of the '462 Patent pursuant to a license agreement between AGS and USF-RF (Doc. 1, ¶¶ 6-7). Perfect Keto develops and markets healthy snacks and nutritional products, including "Perfect Keto Nootropic Brain Supplement" and "Perfect Keto Perform Pre Workout Powder" (collectively, the "Perfect Keto Products"), aimed to benefit consumers who are seeking to increase their health and lose weight as part of a "keto" diet (Doc. 1, ¶¶ 16, 22). Perfect Keto markets its products through Amazon.com and other channels (Doc. 1, ¶ 17). Before filing this action, Perfect Keto and AGS were negotiating an asset sale agreement, but Perfect Keto entered into an agreement with another party (Doc. 1, ¶¶ 18-19). Subsequently, AGS notified Amazon.com that the Perfect Keto Products infringed the '462 Patent

(Doc. 1, ¶ 22). As a result, Amazon.com temporarily removed the Perfect Keto Products from sale on Amazon.com (Doc. 1, ¶ 23). According to Perfect Keto, compositions for inducing ketosis comprising mixtures of a medium chain fatty acid and beta-hydroxybutyrate monomer salt mixture were disclosed in publications dating as early as 1990 and disclosed to persons of ordinary skill in the art of administering such compositions to achieve the goal of inducing ketosis, suppressing appetite, or promotion weight loss in a mammal (Doc. 1, ¶¶ 39-40). Perfect Keto brought this action for a declaratory judgment of noninfringement and invalidity of the '462 Patent against Defendants (Counts I and II) and for damages against AGS for its alleged tortious interference with contract and tortious interference with prospective economic advantage under Texas law (Counts III and IV) (Doc. 1).

## II.   Standard of Review

Defendants seek to dismiss Perfect Keto's claims for lack of subject matter under Rule 12(b)(1), Federal Rules of Civil Procedure, and for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Federal Rules of Civil Procedure. When a defendant seeks dismissal under both Rules 12(b)(1) and 12(b)(6), a court first addresses the jurisdictional question. *Jones v. State of Ga.*, 725 F.2d 622, 623 (11th Cir. 1984) ("When a district court has pending before it both a 12(b)(1) motion and a 12(b)(6) motion, the generally preferable approach . . . is for the court to find jurisdiction and then decide the 12(b)(6) motion.").

### A.      Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

In pursuing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a movant may challenge subject matter jurisdiction either facially or factually. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). In reviewing a "facial" attack on the complaint, the court must look to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id*. at 1529. In doing so, the allegations in the plaintiff's complaint are taken as true for the purposes of the motion. *Id.* In reviewing a "factual" attack on the complaint, the court may look at matters outside the pleadings, such as testimony and affidavits, because the challenge to subject matter jurisdiction is in fact, irrespective of the pleadings. *Id.* In this case, USF presents a factual attack on the court's subject matter jurisdiction because it relies on evidence outside the pleadings that demonstrate that it is an agent of the state and did not waive immunity.

### B.      Rule 12(b)(6) – Failure to State a Claim

In considering a motion to dismiss under Rule 12(b)(6), the court views the complaint in the light most favorable to the plaintiff and accepts as true all of the factual allegations contained therein. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (citation omitted). The court need not, however, "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint challenged

4

by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, a plaintiff must provide the grounds for his or her entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Accordingly, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *See id.* at 679.

## III.   Discussion

### A.   Sovereign Immunity and the Eleventh Amendment

"States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Under the Eleventh Amendment, federal courts are barred from entertaining suits against states. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 & n.8 (11th Cir. 2003) (citing U.S. Const, amend. XI.). This Eleventh Amendment immunity extends to arms of the state. *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1231-32 (11th Cir. 2000). It is well settled in Florida that state universities, and their boards of trustees, are arms of the state that are entitled to Eleventh Amendment immunity. *See e.g., Crisman v. Fla. Atlantic Univ. Bd. of Trs.*, 572 F. Appx. 946, 949 (11th Cir. 2014) ("FAU is entitled to Eleventh Amendment immunity on Crisman's FL–ADEA claim."); *Irwin v. Miami-Dade Cnty. Pub. Schs., et al.*, 398 Fed. Appx. 503, 507 (11th Cir. 2010) ("Irwin's claims

against Florida International University . . . are barred by the Eleventh Amendment . . . .").

Perfect Keto does not dispute that USF is an arm of the state and is therefore entitled to Eleventh Amendment immunity. Rather, Perfect Keto argues that USF waived its immunity from suit in this case when it voluntarily agreed to the express terms of the USF-AGS License Agreement.

## B.    Waiver of Sovereign Immunity

The Eleventh Amendment confers waivable immunity upon sovereign entities "rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *see also PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2262 (2021) (collecting cases). Therefore, the Eleventh Amendment does not bar federal courts from hearing suits brought against states because states can waive their immunity. *PennEast Pipeline Co., LLC*, 141 S. Ct. at 2262. However, such waiver must be voluntarily clear and unequivocal on the part of the sovereign. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999) (citations omitted). A sovereign may be found to have waived immunity if it voluntarily invokes the court's jurisdiction or if the state makes a clear declaration that it intends to submit itself to the court's jurisdiction. *Id.* at 676-77. A court may find a waiver exists "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable

construction." *Crisman* , 572 F. App'x at 947 (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990).

Perfect Keto argues that USF has made a clear declaration that it intended to submit itself to federal court jurisdiction in connection with matters arising from its License Agreement with AGS. Specifically, Perfect Keto argues that USF waived its immunity by agreeing to the following provisions in the License Agreement:

> 8.3    If within six (6) months after having been notified of any alleged infringement, Licensor shall have been unsuccessful in persuading the alleged infringer to desist and shall not have brought an infringement action against the alleged infringer, or if Licensor shall notify Licensee at any time prior thereto of its intention not to bring suit against the alleged infringer, then, and in those events only, Licensee shall have the right, but shall not be obligated, to prosecute at its own expense an infringement of the Licensed Patents, *and Licensee may, for such purposes, use the name of Licensor as party plaintiff*, although Licensee shall notify Licensor of any proposed actions against infringers prior to such action, and Licensor will have the right to assume control of such action. No settlement, consent judgment or other voluntary final disposition of the suit may be entered into without the consent of Licensor, which consent shall not be unreasonably withheld. Licensee shall indemnify Licensor against any order for costs that may be made against Licensor in such proceedings, unless Licensor assumes control of such action in which case Licensee shall not indemnify Licensor.

> . . .

> 8.6    In any suit in which either party is involved to enforce or defend the Licensed Patents pursuant to this Agreement, *the other party hereto shall*, at the request and expense of the party initiating such suit, *cooperate in all respects* and, to the extent possible, have its employees testify when requested and make available relevant records, papers, information, samples, specimens, and the like.

(Doc. 27-1, at 13) (emphasis added).

Perfect Keto argues that in section 8.3, USF transfers the right to decide whether it can be brought in as a party in a patent litigation to AGS, and that section 8.6 requires that USF to cooperate with AGS if AGS files a patent infringement suit. Additionally, Perfect Keto argues that section 8.7 is further evidence that USF waived its immunity with respect to litigation relating to the licensed patents, including suits that AGS might file against USF. Section 8.7 of the License Agreement states:

> 8.7  In the event Licensee contests the validity of any Licensed Patents, unless and until Licensor terminates this Agreement pursuant to 9.3.10, Licensee shall continue to pay royalties and make other payments pursuant to this Agreement with respect to the contested Licensed Patent(s) as if such contest were not underway until the contested Licensed Patent(s) is adjudicated invalid or unenforceable by a court of last resort.

(Doc. 27-1, at 13-14).

Perfect Keto cites to two cases purportedly supporting its position that USF voluntarily waived its sovereign immunity pursuant to the provisions cited above: *In re Holoholo*, 512 F. Supp. 889 (D. Haw. 1981) and *Ciba-Geigy Corp. v. Alza Corp.*, 804 F. Supp. 614 (D.N.J. 1992). Neither of these cases are binding authority or persuasive. In *In re Holoholo,* the court found that the Regents of California had impliedly consented to suit by contract because the contract contained a provision that stated that the "university shall initiate, where it may legally do so, or defend litigation and claims in connection with this contract. . . ." 512 F. Supp. at 899-902. The court also found that the waiver was supported by a statutory waiver of the university's sovereign immunity in certain circumstances. *Id*. at 896-97. In *Ciba-*

*Geigy Corp.*, the University of California entered into a licensing agreement with a manufacturer that allowed the university to decide at a later date whether it should commence an infringement action and thereby waive its immunity. 804 F. Supp. at 626. Additionally, the university agreed to be named as a nominal plaintiff *only* when declared to be an indispensable[2] party by a federal court. *Id.* The parties later amended the licensing agreement and the university agreed to be bound by any judgment entered in a patent infringement lawsuit and withdrew its right to commence a lawsuit. *Id.* The court held that "*[e]ven if* either of these provisions of the License Agreement could constitute a contractual waiver, when read with the amended License Agreement, the court must conclude that the Regents never intended to waive its sovereign immunity." *Id.*

However, neither of these cases support a broad interpretation of waiver that allows for an implicit contractual waiver of sovereign immunity, nor do the provisions cited by Perfect Keto support such a finding. Although the License Agreement contemplates that USF and AGS may be defendants in a declaratory judgment action and having the option to enforce its patent in an infringement suit, the language is not a clear declaration of waiver. *See College Sav. Bank*, 527 U.S. at 676 (noting waiver is absent even where a state merely states "its intention to sue or be sued, . . . or even authorizing suits against it in any court of competent

---

[2] "Rule 19 no longer uses the term 'necessary party;' the more modern term is 'required party.' *See Republic of the Philippines v. Pimentel*, 553 U.S. 851, 855-56 (2008). The Rule also no longer uses the term 'indispensable.' *Id.* These changes were intended to be stylistic only. *See* Fed. R. Civ. P. 19 advisory committee's note to 2007 amendment." *Gensetix, Inc. v. Bd. of Regents of Univ. of Texas Sys.*, 966 F.3d 1316, 1320 n. 3 (Fed. Cir. 2020).

jurisdiction.") (quotations omitted). Furthermore, section 8.7 specifically addresses a scenario where AGS contests the validity of the patent but does not explicitly waive sovereign immunity as to suits from third parties. Accordingly, USF has not voluntarily invoked this Court's jurisdiction in this case, and there is no evidence that the state has made a clear declaration that it intends to submit itself to this Court's jurisdiction. Therefore, USF has not waived sovereign immunity.

### C.    Rule 19(a) – USF Cannot be Joined

USF argues that it is a required party to this action and because it cannot be joined as a sovereign, the case should be dismissed. Perfect Keto responds that the case may proceed even if the Court determines that sovereign immunity is applicable, and USF is a required party pursuant to Federal Rule of Civil Procedure 19. Rule 19 provides a two-part analysis in determining Rule 19 motions to dismiss. First, the court must determine under Rule 19(a) whether the party in question is one who should be joined if feasible. Next, under Rule 19(b), if the party should be joined but cannot be, then the court must determine whether the litigation may continue without the required party or should be dismissed. *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279-80 (11th Cir. 2003); Fed. R. Civ. P. 19. "Determining whether [a suit should be dismissed in the absence of a required party] is a highly-practical, fact-based endeavor, and . . . a district court will ordinarily be in a better position to make a Rule 19 decision than a circuit court would be." *Gensetix, Inc. v. Bd. of Regents of Univ. of Texas Sys.*, 966 F.3d 1316, 1324 (Fed. Cir. 2020) (citation omitted); *see also Pimentel*, 553 U.S. at 862-63 ("The design

of the Rule, then, indicates that the determination whether to proceed will turn upon factors that are case specific, which is consistent with a Rule based on equitable considerations."). Rule 19(a)(1) states that a party is required where:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Rule 19(a)(2) provides the mechanism by which a required non-party may be joined: "If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff." Fed. R. Civ. P. 19(a)(2).

Generally, patent owners who grant exclusive licenses but retain substantial rights in the patent are required parties to infringement actions brought by their licensees. *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010) (affirming that when an exclusive license transfers less than "all substantial rights" in the patents to the licensee, the licensee may still be permitted to bring suit against infringers, but the licensor is a required party who must be joined); *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1219 (Fed. Cir. 2010)

(holding that because licensee had acquired less than all substantial rights in the patents in suit, licensor was a necessary party to plaintiff's declaratory judgment action).

Here, USF did not transfer all substantial rights to AGS. Rather, USF granted AGS a field-of-use license for the '462 Patent as to the marketing and sale of products for human and veterinary consumption and specifically excluded pharmaceutical products and medical foods (Doc. 27-1, at 3). Additionally, according to section 8.2 of the License Agreement, USF retained a priority right to prosecute any infringement of the licensed patents at its own expense (Doc. 27-1, at 13). As noted earlier, in section 8.3 of the License Agreement, USF transferred the right to prosecute any infringement of the licensed patents to AGS only if within six months from being notified of any alleged infringement, USF had not brought forward an infringement action or had notified AGS that it did not intend on bringing a suit against the alleged infringer (Doc. 27-1, at 13). Still, even in those circumstances when AGS intends to file an infringement action, USF retains the right to assume control of such action and further, no settlement, consent judgment, or other voluntary final disposition would be entered without USF's consent (Doc. 27-1, at 13). Thus, because USF did not transfer all substantial rights in the '462 Patent, it is a required party under Rule 19(a). However, USF cannot be compelled to join as a party because it is entitled to sovereign immunity.

### D.    Rule 19(b) – Equitable Considerations

Given that USF cannot be compelled to join this matter as a party, the court must then analyze the Rule 19(b) factors to determine whether, "in equity and good conscience," the action may proceed even though USF is a required party that cannot be joined. Fed. R. Civ. P. 19(b).

Rule 19(b) sets out four factors for the court to consider:

(1)  the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2)  the extent to which any prejudice could be lessened or avoided by:

   (A) protective provisions in the judgment;

   (B) shaping the relief; or

   (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

The first factor for the court to consider is the extent to which a judgment rendered in USF's absence might prejudice it or the existing parties. Fed. R. Civ. P. (19)(b)(1). USF argues that maintaining jurisdiction over Perfect Keto's declaratory judgment claims in its absence poses a significant risk of prejudicing its interests in the '462 Patent. USF relies on *Florida Wildlife Federation Inc. v. United States Army Corps of Engineers*, 859 F.3d 1306 (11th Cir. 2017) and *A123 Sys., Inc.*, 626 at 1213 in

13

support of its argument that when a required sovereign cannot be joined, the claims must be dismissed.

In *Florida Wildlife*, the Eleventh Circuit found that it had no choice but to find a state sovereign water district was "indispensable" to the litigation because any consideration of the merits in the sovereign's absence was itself an infringement on sovereign immunity pursuant to *Pimentel*. 859 F.3d at 1318. *Pimentel* involved an interpleader action to determine ownership of property allegedly stolen by the former President of the Philippines. 553 U.S. at 857-59. In finding that the action should not have proceeded in the Republic of Philippines' absence, the Supreme Court noted that a sovereign's immunity from suit is a "privilege [that] is much diminished if an important and consequential ruling affecting the sovereign's substantial interest is determined, or at least assumed, by a federal court in the sovereign's absence and over its objection." *Id*. at 868. The Court explained that, "where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered *where there is a potential for injury to the interests of the absent sovereign*." *Id*. at 867 (emphasis added).

In *A123*, an alleged infringer ("A123") brought a declaratory action against the licensee ("HQ") pursuing claims of noninfringement and invalidity. 626 F.3d at 1215-17. The licensee had an exclusive field-of-use license which had been granted by the University of Texas ("UT"). *Id*. at 1216. HQ moved to dismiss the declaratory action, arguing that UT was a required party but could not be joined because it had not waived sovereign immunity. *Id*. HQ and UT subsequently

initiated an infringement suit against A123 in a different jurisdiction. *Id*. The Federal Circuit, relying on *Pimentel*, found that the first factor weighed in favor of dismissal because if it reinstated the action and the patents were declared invalid, "UT would lose all rights in its patents despite the fact that it had no opportunity to defend its interests in the litigation." 626 F.3d at 1219. The court noted that although UT and HQ shared the same overarching goal of defending the patents' validity, neither that goal nor the fact that UT had filed a suit jointly with HQ in a different jurisdiction demonstrated that UT's interests would be adequately represented by the licensee in the present action. *Id*. at 1221. Specifically, the court noted that HQ and UT's interests in the patents, although overlapping, were not identical. *Id*. The court reasoned that "HQ is a field-of-use licensee, and a claim construction that serves its interests in obtaining an infringement judgment against A123 in this case may very well conflict with UT's interests in subject matter not licensed to HQ and in not risking the validity of its patents' claims." *Id*. Accordingly, the court found that it was obligated to "give sufficient weight to the prejudice to UT." *Id*.

However, neither *Florida Wildlife* nor *A123* set a per se rule that where a field of use patent is in question and the patent owner invokes sovereign immunity, the case must be dismissed. Rather, in *Gensetix*, the Federal Circuit affirmed that the proper analysis of the Rule 19(b) factors is a "nuanced" one, even when considering the interests of a state sovereign. 966 F.3d at 1327. In fact, the court noted that it was unpersuaded that a court must give "decisive weight" to a state's sovereign

interest in conducting this analysis. *Id*. at n. 9. Specifically, the court concluded that it was an abuse of the district court's discretion to give "overwhelming weight to . . . sovereign status to the exclusion of all other facts." *Id*. at 1326. Thus, the fact that the state sovereign is a required party does not command decisive weight to its interest in dismissing the case. Rather, the state's interest is appropriately considered within the bounds of the Rule 19(b) analysis.

USF relies on the prejudice analysis articulated by the court in *A123* to support its contention that while the interests of USF and AGS may overlap, they are not identical. The same concern that the court noted in A123 regarding UT's interests in subject matter not licensed to HQ and in not risking the validity of its patents' claims exists here. For instance, a claim construction that serves AGS' interests in defending against noninfringement in this case may very well conflict with USF's interests in other fields of use. Additionally, if the case continues and Perfect Keto prevails on its invalidity claim, USF may lose all rights in its patent despite the fact that it had no opportunity to defend its interests in the litigation.

It is worth noting that the express language in the License Agreement could give rise to a scenario where USF's interests may be adequately represented by AGS. USF specifically contracted the following:

> 8.4   *In the event that a declaratory judgment action is brought* against Licensor or Licensee by a third party *alleging invalidity, unpatentability, unenforceability, or non-infringement of the Licensed Patents*, *Licensor, at its option, shall have the right* within twenty (20) days after commencement of such action *to take over the sole defense of the action* at its own expense. *If Licensor does not exercise*

*this right, Licensee shall be responsible for the sole defense* of the action at Licensee's sole expense, subject to Sections 8.5 and 8.6.

8.5     In the event that Licensee shall undertake the enforcement by litigation and/or defense of the Licensed Patents by litigation, Licensor shall have the right, but not the obligation, to voluntarily join such litigation, represented by its own counsel at its own expense. In the event that Licensor or Licensee shall undertake the enforcement by litigation and/or defense of the Licensed Patents by litigation, any recovery of damages by Licensor or Licensee for any such suit shall be applied first in satisfaction of any unreimbursed expenses and legal fees of Licensor (including any contingency fees) relating to the suit, and next toward reimbursement of any unreimbursed expenses and legal fees of Licensee relating to the suit. The balance remaining from any such recovery shall be divided equally between Licensee and Licensor.

8.6     In any suit in which either party is involved to enforce or defend the Licensed Patents pursuant to this Agreement, the other party hereto shall, at the request and expense of the party initiating such suit, cooperate in all respects and, to the extent possible, have its employees testify when requested and make available relevant records, papers, information, samples, specimens, and the like.

(Doc. 27-1, at 13) (emphasis added).

The License Agreement is unambiguous in that USF and AGS contemplated that either could be sued by a third party in a declaratory action and if USF did not take over the action, AGS would be responsible for the *sole defense* of claims of invalidity and noninfringement, like the ones at issue here. It is clear from the language in the License Agreement that USF agreed that AGS could protect USF's interests even in defending a declaratory judgement action relating to the alleged invalidity of the patent, if USF failed to exercise its right to take over the sole defense of the action. Thus, pursuant to section 8.4, an argument could be asserted that USF

and AGS contemplated and agreed that under certain circumstances AGS would be able to adequately represent USF's interest in defending noninfringement and invalidity claims. Under section 8.4, if USF opted to require AGS to be responsible for the sole defense at AGS' sole expense, then it could be argued that any potential prejudice to USF would be minimal given that USF would have made a determination that AGS was in a position to adequately protect USF's interests in the matter and be responsible for the sole defense. *See Gensetix* 936 F.3d at 1316 (concluding that "[t]he prejudice to UT is minimal, or at least substantially mitigated, because . . .Gensetix will adequately protect UT's interests in the validity of the patents-in-suit).

However, it is clear that USF has not allowed AGS to be responsible for the sole defense, as USF and AGS are represented by separate counsel and have filed separate motions to dismiss. The substance of USF's motion is limited to its interest in the '462 Patent (*see* Doc. 18). Although it is unclear whether USF is proceeding under section 8.4 of the License Agreement and taking over the sole defense regarding the noninfringement and invalidity claims or under section 8.5 and joined the litigation to defend its own interests and to be represented by its own counsel, what is clear is that USF has determined not to allow AGS to represent its interests. In other words, regardless of whether USF is proceeding under section 8.4 or section 8.5 of the License Agreement, USF is proceeding under its prerogative to defend its own interests and not allowing AGS to do so. Given that the very prejudice as identified by the court in *A123* exits here and USF has not deferred to allow AGS

to defend its interest, then allowing the case to proceed would clearly prejudice the interests of USF. Therefore, the first Rule 19(b) factor weighs in favor of dismissing the case.

The second factor for the court to consider is the extent to which any prejudice could be lessened or avoided by relief or measures alternative to dismissal. Fed. R. Civ. P. 19(b)(2). The cases cited by the parties, to specifically include *A123*, provide little guidance as to what types of measures could remediate the potential prejudice in the context of a field-of-use license. Further, Perfect Keto does not suggest any alternative that would reduce the potential prejudice to USF. Perfect Keto does argue that since USF is contractually required to assist AGS in defending this case, by providing such assistance USF will avoid any potential prejudice that it might otherwise suffer as a result of the litigation proceeding without it. While the License Agreement has import as to the court's consideration under the first Rule 19(b) factor, as discussed above, it has no bearing on the second factor, as to whether there are alternatives available to the court to reduce the resulting prejudice to USF if the '462 Patent is found to be invalid. During the January 26, 2022 hearing, USF suggested that the second factor was inapplicable to the instant case and neutral at best, as concluded by the court in *A123*. Given that there are no alternatives suggested by the parties or announced by the case law, the second Rule 19(b) factor should be considered neutral.

The third factor for the court to consider is whether a judgment rendered in USF's absence would be adequate. Fed. R. Civ. P. 19(b)(3). The Supreme Court

has explained that "adequacy" refers to the "public stake in settling disputes by wholes, whenever possible." *Pimentel*, 553 U.S. at 870 (quotation marks omitted). "Ordinarily, this factor takes into account additional litigation that might be initiated by an absent party who is not bound by the judgment." *Miami Herald Media Co. v. Fla. Dep't of Transportation*, 345 F. Supp. 3d 1349, 1373 (N.D. Fla. 2018). USF argues that in its absence, Perfect Keto runs the risk of enduring multiple suits on the same patents. Perfect Keto argues that collateral estoppel may prevent USF from taking such an approach but does not sufficiently develop this argument. In *A123*, the court found that because UT retained nonoverlapping rights in the patents in suit, "UT may very well be able to assert infringement claims against A123 *that HQ cannot*, creating the risk of multiple lawsuits and of inconsistent relief." 626 F.3d at 1222. The inference being that the sovereign could assert infringement claims that the licensee could not. Therefore, in this matter, USF may likely be able to assert infringement claims against Perfect Keto that AGS cannot, given that AGS does not have a full license of the patent. Given the risk of multiple litigation regarding the same patent, the third Rule 19(b) factor also weighs in favor of dismissing the action.

Finally, the fourth factor for the court to consider is whether Perfect Keto has an adequate remedy if the action were dismissed. USF concedes that dismissal due to sovereign immunity is likely to leave Perfect Keto without a federal court forum to adjudicate its dispute. USF contends that this is, however, simply a consequence of the sovereign immunity doctrine. Further, USF argues that Perfect Keto has an

alternative forum to address Amazon.com removing it from its marketplace because Amazon.com has invited the parties to participate in its neutral patent evaluation program.[3] At the January 26, 2022 hearing, neither party was able to present any additional record evidence to demonstrate whether Amazon.com's program is or is not an adequate alternative remedy. However, Perfect Keto stated at the January 26, 2022 hearing, that the Perfect Keto Products were only temporarily removed from Amazon.com and are currently be marketed and sold on Amazon.com. Thus, although not an entirely adequate remedy, any alleged continual harm to Perfect Keto is mitigated by the fact that the Perfect Keto Products have been placed back on the Amazon.com marketplace and AGS has not further intervened to limit Perfect Keto's access to the marketplace.

Clearly, USF's sovereign interest must be given consideration in the Court's Rule 19(b) analysis, but such interest should not be given "controlling weight." *Gensetix*, 966 F.3d at 1326. Rather, the proper analysis under Rule 19(b) is a nuanced one. *Id.* at 1327. In considering USF's sovereign interest along with the Rule 19(b) factors, USF may be prejudiced by a judgment in its absence and the risk of

---

[3] USF also argues that Perfect Keto could have challenged the '462 Patent's validity by filing a petition for inter-partes review with the United States Patent and Trademark Office but chose not to do so. Notably, that option is no longer available to Perfect Keto. *See* 35 U.S.C. 315(a)(1) ("An inter partes review may not be instituted if, before the date on which the petition for such a review is filed, the petitioner or real party in interest filed a civil action challenging the validity of a claim of the patent."). However, the adequacy of this potential alternative remedy is uncertain given that USF fails to establish how any validity challenge with the United States Patent and Trademark Office would resolve Perfect Keto's noninfringement claim.

competing claims and multiple lawsuits exists, it is recommended that the case be dismissed.

Although the undersigned recommends, under the present circumstances, that "equity and good conscience" requires dismissal of Perfect Keto's complaint, the balance of equities could change in the future. In *Pimentel*, the Supreme Court explained:

> The balance of equities may change in due course. One relevant change may occur if it appears that the Sandiganbayan cannot or will not issue its ruling within a reasonable period of time. Other changes could result when and if there is a ruling. If the Sandiganbayan rules that the Republic and the Commission have no right to the assets, their claims in some later interpleader suit would be less substantial than they are now. If the ruling is that the Republic and the Commission own the assets, then they may seek to enforce a judgment in our courts; or consent to become parties in an interpleader suit, where their claims could be considered; or file in some other forum if they can obtain jurisdiction over the relevant persons.

553 U.S. at 873. Similar changes could occur that may impact the balance of equities in this case. For instance, if AGS intervenes in such a way that Amazon.com removes the Perfect Keto Products from its marketplace again, then it increases the strength of Perfect Keto's position regarding not having an adequate remedy; or if AGS seeks to enforce the patent against Perfect Keto, then the risk of injury to any interest claimed by USF may be less substantial. That shift in the balance of equities might well require a different outcome under a Rule 19(b) analysis. However, the Court should only consider the equities on the present record to decide whether to dismiss this action. Because the absent USF is entitled to claim its sovereign immunity and allowing the case to proceed would clearly prejudice the interests

USF is seeking to protect in the '462 patent, the undersigned recommends that "equity and good conscience" requires that the Court grant USF's Motion (Doc. 18) and dismiss the claims of noninfringement and invalidity of the '462 Patent (Counts I and II) against USF and AGS.

### E.    Perfect Keto has Properly Stated Noninfringement and Invalidity Claims

If the Court finds that the claims of noninfringement and invalidity of the '462 Patent (Counts I and II) shall proceed in some fashion contrary to USF's sovereign immunity and Rule 19 arguments, then the Court must address AGS' Motion to Dismiss (Doc. 19) and determine whether Perfect Keto has properly stated its claims.[4] In a patent case, a determination of infringement (or noninfringement) requires a two-step analysis. *Spanakos v. Aronson*, No. 17-80965-CV, 2018 WL 2392011, at *5 (S.D. Fla. Apr. 3, 2018) (citing *Advanced Cardiovascular Sys. v. Scimed Life Sys.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001)). First, the court must determine the scope and meaning of the patent claims asserted. The second step is to compare the construed claims to the allegedly infringing device or process. *See Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1370 (Fed. Cir. 2003). Generally, a motion to dismiss is not the proper vehicle to raise claim construction arguments. *Spanakos*, 2018 WL 2392011 at *5; *see also DOK Sol. LLC v. FKA Distrib. Co.*, No. 8:14-CV-1910-T-30TBM, 2015 WL 1606339, at *1 (M.D. Fla. Apr. 8, 2015)

---

[4] Alternatively, if the Court grants USF's Motion to Dismiss (Doc. 18), then the Court could simply deny AGS' Motion to Dismiss (Doc. 19) as to Counts I and II as moot.

("When, as here, the parties dispute the meaning of a term, claim construction is necessary to determine the term's meaning.").

Here, AGS argues that Perfect Keto failed to state a claim as to noninfringement and invalidity because it did not set forth factual allegations showing how its products do not infringe on the patent, or how or why the asserted patent is invalid. Specifically, AGS argues that Perfect Keto's claim of noninfringement fails because Perfect Keto's Products contain at least two monomer salts and thus meet the limitations of claim 1 of the '462 Patent, which describes a "beta-hydroxybutyrate monomer mixture" as a mixture "comprising a plurality . . . with at least two" monomer salts. Perfect Keto alleges that the Perfect Keto Products do not "infringe any claim of the '462 patent at least because neither product contains any beta-hydroxybutyrate monomer salt mixture, which is an element of every claim of the '462 patent" (Doc. 1, ¶ 24). The parties appear to disagree on the construction of the term "monomer salts" and whether Perfect Keto's Products contain beta-hydroxybutyrate monomer salt mixtures. It would be premature to engage in this analysis at the motion to dismiss stage. *See StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*, No. 8:13-CV-2240-T-33MAP, 2015 WL 518852, at *4 (M.D. Fla. Feb. 9, 2015) (denying motion for judgment on the pleadings in which the defendants argued that the claims lacked the inventive concept because the court had not had the benefit of claim construction briefing). Regardless, Perfect Keto's claim of noninfringement properly puts Defendants on notice of its noninfringement position.

Similarly, Perfect Keto's claim of invalidity effectively provides notice to Defendants of the grounds by which Perfect Keto contends that '462 Patent is invalid. In its Complaint, Perfect Keto alleges that compositions for inducing ketosis comprising mixtures of a medium chain fatty acid and beta-hydroxybutyrate monomer salt mixtures were disclosed in publications dating as early as 1990 and disclosed to persons of ordinary skill in the art of administering such compositions to achieve the goal of inducing ketosis, suppressing appetite, or promotion weight loss in a mammal (Doc. 1, ¶¶ 39-40). Perfect Keto alleges that such prior art publications render the '462 patent claims invalid under 35 U.S.C. §§ 102, 103 (Doc. 1, ¶¶ 40-41). Perfect Keto's allegations regarding invalidity are sufficiently pled to state a claim for relief. *See Industrial Engineering & Development, Inc. v. Static Control Components, Inc.*, No. 8:12-cv-691-MAP, 2013 WL 247408, *3 (M.D. Fla. 2013) (finding that defendant properly identified the specific claims of plaintiffs' patents which it contended were invalid as well as the specific code sections that rendered them invalid, which was sufficient at that stage of the litigation to give plaintiffs fair notice of defendant's claims and the grounds on which they rested); *Minsurg Intern., Inc. v. Frontier Devices, Inc.*, No. 8:10-cv-1589-EAJ, 2011 WL 1336395, *3-*4 (M.D. Fla. 2011) (denying motion to dismiss invalidity declaratory judgment that merely alleged that the claims were invalid because they were anticipated or rendered obvious by the prior art or failed the 35 U.S.C. § 112 requirements, without any factual specificity which supported these defenses). In its Complaint, Perfect Keto provides notice to Defendants that it contends that '462 is invalid. Therefore, if the

Court finds that this case shall proceed despite USF's Motion to Dismiss (Doc. 18), then it is recommended that the Court deny AGS' Motion to Dismiss (Doc. 19) as to Perfect Keto's claims for noninfringement and invalidity (Counts I and II).

### F.    Perfect Keto's Texas State Law Claims and Preemption

If the Court finds that USF's Motion to Dismiss should be granted and that Perfect Keto cannot pursue its noninfringement and invalidity claims (Counts I and II) against either USF and AGS, then the Court must decide whether to exercise supplemental jurisdiction over the Texas state law tortious interference with contract and tortious interference with prospective economic advantage claims (Counts III and IV). Significantly, a district court "may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Therefore, if the Court dismisses Perfect Keto's federal claims (Counts I and II), it is entirely the Court's discretion to determine whether to retain jurisdiction over Perfect Keto's Texas state law claims (Counts III and IV). *See Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction."). Although, as detailed below, the undersigned finds that Perfect Keto's Texas state law claims (Counts III and IV) are preempted as alleged, the Court does not have to make such a determination if it decides not to exercise supplemental jurisdiction over those state law claims.

In the event that the Court decides to allow Perfect Keto's federal law claims (Counts I and II) to proceed in some fashion, then the Court must decide whether Perfect Keto's Texas state law claims (Counts II and IV) are preempted. Federal Circuit law governs whether federal patent law preempts state law claims. *See Ultra–Precision Mfg., Ltd. v. Ford Motor Co.,* 411 F.3d 1369, 1376 (Fed. Cir. 2005). "Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in courts. Such action, considered by itself, cannot be said to be illegal." *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38 (1913). For this reason, "federal patent laws preempt state laws that impose tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1376 (Fed. Cir. 2004). State tort claims against a patent holder, including tortious interference claims based on enforcing a patent in the marketplace, are preempted by federal patent laws, unless the claimant can show that the patent holder acted in "bad faith" "even if bad faith is not otherwise an element of the tort claim." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999). Bad faith has objective and subjective components, and both are necessary to avoid preemption. *See 800 Adept, Inc. v. Murex Sec. Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008) (citing *Dominant Semiconductors SDN. BHD. v. Osram GMBH,* 524 F.3d 1254, 1260 (Fed. Cir. 2008)). The objective component requires a showing that the infringement allegations are "objectively baseless." *Globetrotter Software, Inc.,* 362 F.3d at 1375. The subjective component relates to a showing that the

patentee demonstrated subjective bad faith in enforcing the patent. *Id.* An "objectively baseless" allegation of patent infringement occurs if "no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). Thus, to avoid preemption, Perfect Keto must plausibly allege that AGS "had no reasonable basis to believe that its patent claims were valid or that they were infringed." *800 Adept*, 539 F.3d at 1370. Absent a showing that patent infringement allegations are objectively baseless, it is unnecessary to reach the question of the patentee's intent in determining whether patent holder acted in bad faith in the enforcement of its patent. *See Globetrotter Software, Inc.,* 362 F.3d at 1375.

Perfect Keto cites to *Dow Chemical Co. v. Exxon Corp.*, 139 F.3d 1470 (Fed. Cir. 1998) in support of its argument that a state law cause of action is not preempted by federal law as long as it includes additional elements not found in the federal patent law cause of action. In *Dow Chemical*, the Federal Circuit held that "a state law tort claim is not preempted by the federal patent law, even if it requires the state court to adjudicate a question of federal patent law, provided the state law cause of action includes additional elements not found in the federal patent law cause of action and is not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." *Id.* at 1473. The court found that the district court erred in dismissing the state law tortious interference with contract claims based on patentee's publication of accusations of infringement where it was alleged that the patentee knew that its patent was unenforceable.

Unlike in *Dow Chemical*, where it was alleged that patentee knew its patent was unenforceable, Perfect Keto has not alleged objective bad faith in the instant case. Perfect Keto does not argue that AGS knew the patent was unenforceable when it allegedly engaged in market misconduct. Perfect Keto's claims of tortious interference are based on AGS' actions to enforce the patent by alerting Amazon.com of Perfect Keto's alleged infringement (Doc. 1, ¶¶ 47, 55). Additionally, Perfect Keto does not argue that AGS raised objectively baseless allegations of patent infringement against it or that AGS had no reasonable basis to believe that its patent claims were valid. Rather, Perfect Keto alleges that AGS made false claims of patent infringement against Perfect Keto and appears to imply that the false claims were made due to the failed asset sale agreement between Perfect Keto and AGS (Doc. 1, ¶¶ 18-19, 46, 54). Merely pleading that AGS made false claims of patent infringement by implication is insufficient to plead bad faith. *See Clearplay, Inc. v. Nissim Corp.*, 555 F. Supp. 2d 1318, 1329 (S.D. Fla. 2008); *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1375 (Fed. Cir. 2007) ("Subjective considerations of bad faith are irrelevant if the assertions are not objectively baseless."). As the Federal Circuit has held, patent holders "are allowed to make representations that turn out to be inaccurate provided they make them in good faith." *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002). Thus, because Perfect Keto has failed to plead that AGS acted in bad faith in asserting its patent rights, Perfect Keto's state law tort claims are preempted by federal patent law. As a result, if the Court must address Perfect Keto's Texas state law claims,

then it is recommended that Perfect Keto's claims for tortious interference with a contractual relationship and tortious interference with prospective economic advantage (Counts III and IV) also be dismissed.

**IV.    Conclusion**

As detailed above, given the nature of the issues presented by USF's and AGS' motions, there are varied options on the resolution of the motions. Upon consideration, it is hereby

RECOMMENDED:

1.    USF's Motion to Dismiss (Doc. 18) be GRANTED to the extent that Counts I and II be dismissed against both USF and AGS.

2.    AGS' Motion to Dismiss (Doc. 19) be GRANTED IN PART and DENIED IN PART as follows:

a.    Denied as moot as to Counts I and II; and

b.    Granted as to Counts III and IV to the extent that supplemental jurisdiction over those claims is exercised.

IT IS SO REPORTED in Tampa, Florida, this 25th day of February, 2022.

ANTHONY E. PORCELLI
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:    Hon. Mary S. Scriven
        Counsel of Record